IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**GARY LEE GOODWIN,**

    Plaintiff,

v.

**DAVE IVERSON,** et al,

    Defendants.

Case No. 6:16-cv-01712-MC

**OPINION & ORDER**

MCSHANE, Judge:

For the following reasons, Defendants' Motion for Summary Judgment (ECF No. 21) is **GRANTED** and this matter is **DISMISSED** with prejudice, pursuant to Fed. R. Civ. P. 56. Plaintiff's Motion for Partial Summary Judgment (ECF No. 17) and "Motion in Limine" (ECF No. 51) are **DENIED** as moot.

1 – ORDER

## BACKGROUND

This action was filed by *pro se* plaintiff Gary Lee Goodwin on 8/25/2016, against Benton County Sheriff's Deputy Sgt. Dave Iverson and other law enforcement officers from Benton County, Corvallis, and Philomath. Mr. Goodwin's 42 U.S.C. Section 1983 action alleges violations of his 4th Amendment rights during two traffic stops in Oregon on June 1st and 9th of 2016. (ECF No. 1).

Plaintiff filed a Motion for Partial Summary Judgment (ECF No. 17) on 1/23/2017. Defendants filed a Motion for Summary Judgment (ECF No. 21) on 2/3/2017. Plaintiff filed multiple Responses to the Defendants' motion, including a "Motion in Limine" (ECF No. 51), which appears to be a supplemental briefing in response to the Defendants' summary judgment motion. Although untimely submitted, the court is willing to accept the submission in light of the fact that Plaintiff is appearing *pro se*. Oral arguments were heard in court on 4/6/2017 (ECF No. 49), and these matters are now before this Court.

## STANDARD OF REVIEW

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127,

1130 (9th Cir. 1994)). On a motion for summary judgment, "the moving party bears the initial burden to show the absence of a material and triable issue of fact; the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).

Defendants' motion (ECF No. 21) seeks summary judgment against the Plaintiff's Amended Complaint (ECF No. 14), on the grounds that Defendants are entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56.

# DISCUSSION

Shortly after midnight on June 1, 2016, while driving a marked Sheriff's Department vehicle, Sergeant Dave Iverson and Deputy Jesse Blaser of the Benton County Sheriff's Office initiated a traffic stop of a vehicle driven by plaintiff Gary Goodwin. The basis of the stop was the observation by the officers that the vehicle had a broken taillight. (ECF No. 22 pp. 1-2; ECF No. 23 pp. 1-2). After making contact with Goodwin and receiving his driver's license and documents, Iverson returned to his patrol vehicle and ran Goodwin's name through dispatch. (Iverson Decl. p. 3, Ex. 1 at 00:19:00). Prior to getting a return from dispatch, Iverson radioed Corvallis Police Officer Adam Hackstedt and asked him to respond to the scene with his drug detection K9. (*Id*, Ex. 1 at 19:25). Approximately one minute later, dispatch responded and confirmed that Goodwin's driver's license was valid and that the address where he was registered as a sex offender was the same address Iverson had previously known to be associated with illegal drug crimes. (*Id*, Ex. 1 at 00:20:22). Once receiving this information, Iverson began writing a citation for violation of ORS 816.300 for the broken taillight. (Iverson Decl. p. 3;

3 – ORDER

Blaser Decl. p. 2). Approximately four minutes later, Hackstedt arrived with his K9 and conducted a "sniff" of the outside of Goodwin's car, which consisted of walking the dog around the car three times. The process took less than two minutes and resulted in no drugs being detected by the K9. (Iverson Decl., Ex. 1 at 25:30-26:45, Ex. 2 at 2:30-4:00; Hackstedt Decl. p. 2). As soon as Hackstedt started the "sniff," Goodwin became angry and began shouting profanities at the officers while filming them on his cell phone camera. (Iverson Decl. p. 3; Ex. 2 at 2:55-3:30; Hackstedt Decl. p. 2). During this time, Iverson continued writing the citation, but eventually decided to issue a verbal warning instead in an attempt to deescalate the situation. (Iverson Decl. p. 4; Ex. 2 at 2:55-4:00). The entire stop lasted less than thirteen minutes.

On the evening of June 9, 2016, Philomath Police Officer Matt Moser observed Goodwin driving the same vehicle with a broken taillight and initiated a traffic stop in the parking lot of a convenience store. (Moser Decl. p. 2). Moser did not recognize Goodwin or the vehicle, and was unaware of the previous traffic stop on June 1, 2016. *Id.* Officer Moser approached Goodwin's vehicle and asked for his driver's license, registration, and insurance. As Moser approached, a passenger exited the vehicle. The passenger was holding a bag and quickly walked into the convenience store. (Moser Decl. p. 2, Ex 1 at 00:30-1:15). Because of the passenger's actions, Moser decided to wait for cover and he took a position where he could observe both Goodwin and the passenger. (Moser Decl. p. 2, Ex. 1 at 1:15-3:40). During this time, Moser radioed Corvallis Police Officer Adam Hackstedt and asked him to respond with his drug detection K9. *Id.* Less than three minutes later, Philomath Police Officer Kevin Frahm arrived to back-up Moser. (Moser Decl. p. 2, Ex. 1 at 3:00-3:40; Frahm Decl. p. 2). Once Frahn arrived, Moser began writing Goodwin's citation. *Id.*

4 – ORDER

Approximately five minutes later, while Moser was still writing the citation, Hackstedt arrived and conducted another "sniff" with his K9 around the exterior of Goodwin's vehicle. (*Id* at 9:15-12:25; Frahm Decl., Ex. 1 at 7:25-9:01; Hackstedt Exs. 1, 2). The "sniff" again took less than two minutes and no drugs were detected. *Id*. The entire stop lasted twenty minutes. *Id*.

In *Illinois v. Cabelles*, the US Supreme Court held that because no person has a right to possess illegal drugs, no reasonable suspicion is needed to walk a drug detecting dog around the perimeter of a lawfully stopped vehicle. *Illinois v. Cabelles*, 543 U.S. 405, 408-409, 125 S.Ct. 834 (2005); also see *Turvin*, 517 F.3d 1097, 1102-3 (9th Cir. 2008).

The plaintiff's briefings is primarily focused on why the Plaintiff believes drug sniffing dogs are not allowed to be used to uncover evidence of "scrape baggies…pipes with residue, IV needles …nickel and dime bags." The Plaintiff's position is that the police are permitted to use such a tactic only when "commercial quantities" of drugs are the focus of an investigation. (ECF No. 43 pp. 2-4). However, the *Cabelles* decision and the cases that followed it placed no such limits or restrictions on quantity or intent. The lawfulness of the police using a drug dog to sniff the outside of a lawfully stopped vehicle applies equally to potential commercial drug traffickers as it would to casual users. *Id*.

During oral arguments and in his "Motion in Limine" (ECF No. 51), the plaintiff has asserted his concern that Sgt. Iverson "failed to produce a copy of the unissued citation" that Iverson decided not to issue to Mr. Goodwin *Id* at p.2. Doing so is not required by law and this is a non-issue. Police officers have always had the discretion to choose to merely give verbal (or written) warnings in lieu of writing a citation. Producing a copy of an unissued citation is unnecessary and irrelevant, especially in light of the fact that in the videos of the incident, Iverson can clearly be seen writing the citation until he decided to issue a verbal warning in an

5 – ORDER

attempt to diffuse the situation which was escalated by the plaintiff's behavior. (Iverson Decl. p. 4; Blaser Decl. p. 2).

In light of *Cabelles*, the actual issue in this case, is whether the stops were unnecessarily prolonged or delayed in order to accommodate the dog sniffs. Based on the evidence before this Court, the answer is no.

The first traffic stop on June 1, 2016, lasted less than thirteen minutes. In the Ninth Circuit, fourteen minutes is a presumptively reasonable amount of time for a traffic stop and does not require evidentiary findings. *United States v. Turvin*, 517 F.3d at 1101-02 (9th Cir. 2008). ("evidentiary findings are [not] necessary to demonstrate the sensible observation that fourteen minutes is not unreasonably long for a traffic stop."). The defendants are entitled to summary judgment based on a finding that their conduct was reasonable as a matter of law.

The second stop on June 9th lasted twenty minutes and resulted in a citation being issued for the broken taillight. Regardless of the duration of the stops, none of the officers involved acted unreasonably or unlawfully delayed either traffic stop. The officers' body cameras, their patrol vehicle dashboard cameras, and the plaintiff's cell phone videos all confirm that during both stops the officers continued pursuing the purpose of the stops and did not purposely or unreasonably delay or extend their duration. On the contrary, any undue delays or distractions perceived by the Plaintiff were caused by *his own* actions and behavior, not those of the officers.

For instance, during both stops the officers were subjected to Goodwin's incessant berating. Plaintiff is seen in the video record *repeatedly* calling the officers "fuckers," "motherfuckers," "assholes," "bitches," and telling them to "suck a dick," etc. (Hackstedt Decl., Exs. 1 and 2; Frahm Decl., Ex. 1; Moser Decl., Ex. 1; Iverson Decl., Ex.1). Most concerning, during the second stop on June 9th, it appears that at one point Mr. Goodwin started his vehicle

6 – ORDER

and momentarily put the gear in reverse, indicating an intention to flee the scene. (Frahm Decl. p. 2, Ex. 1 at 9:00; Hackstedt Decl. pp. 2-3, Ex. 2).

While Mr. Goodwin's comments are indeed protected speech, they are also distracting and to some degree alarming. Any reasonable officer could be expected to pause *at least* momentarily in order to focus their attention on Mr. Goodwin and assess the situation, ponder what further actions he might take, and consider any potential officer safety concerns.

This Court finds it worth noting that all of the law enforcement officers involved in these two incidents showed a remarkable (and commendable) level of professionalism and restraint in their interactions with Mr. Goodwin. They remained calm and polite despite the verbal onslaught and went about their business. Officers with less experience or professionalism could have reacted to Mr. Goodwin's provocations in such a way that would have escalated the incidents into something far more serious than what occurred here.

It is also worth noting that Mr. Goodwin may reasonably feel like he was being singled out by law enforcement for past activity that he has worked hard to put behind him. Indeed, it may well be that the stop for the broken taillight was a pretext by law enforcement to simply check out Mr. Goodwin. The argument put forward by the defense that the police had reasonable suspicion to stop Mr. Goodwin based on his past drug use was weak and only supports the Plaintiff's belief that he was being picked on. But the issue here is not the motivation for the stop; rather it is whether the officers, after making a legal stop for a traffic violation, unreasonably extended it in order to conduct the dog sniff. In this case, they did not.

# **CONCLUSION**

For these reasons, Defendants' Motion for Summary Judgment (ECF No. 21) is **GRANTED** and this matter is **DISMISSED** with prejudice, pursuant to Fed. R. Civ. P. 56. Plaintiff's Motion for Partial Summary Judgment (ECF No. 17) and "Motion in Limine" (ECF No. 51) are **DENIED** as moot.

IT IS SO ORDERED.

DATED this 26th day of April, 2017.

_____
Michael J. McShane
United States District Judge